UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUANITA BUTHIA,
on behalf of S.D.B.,

      Plaintiff,                     Civil Action No. 19-12588
                                   Honorable David M. Lawson
              v.                Magistrate Judge Elizabeth A. Stafford

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,[1]

      Defendant.
_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 19, 22]

Plaintiff Juanita Buthia, acting *pro se* and on behalf of her minor

granddaughter S.D.B., appeals a final decision of Defendant Commissioner

of Social Security (Commissioner) denying S.D.B.'s application for

supplemental security income benefits (SSI) under the Social Security Act.

Both parties have filed summary judgment motions, referred to this Court

for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the record, the Court finds that the administrative law

_____

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor
defendant.

judge's (ALJ) decision is supported by substantial evidence, and thus

**RECOMMENDS** that:

- Buthia's motion [ECF No. 19] be **DENIED**;

- the Commissioner's motion [ECF No. 22] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

**I.    BACKGROUND**

**A.    Background and Disability Application**

Born in February 2004, S.D.B. was 12 years old when Buthia filed an application for disability benefits in June 2016.  [ECF No. 15-5, PageID.192].  Buthia alleged that S.D.B. was disabled by attention deficit hyperactivity disorder (ADHD), and that the onset date was May 20, 2016. [ECF No. 15-3, PageID.108].  After an April 2018 hearing, during which S.D.B. and Buthia testified, the ALJ found that S.D.B. was not disabled in an October 2018 written decision.  [ECF No. 15-2, PageID.54-70, 74-105]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Buthia timely filed for judicial review. [*Id.*, PageID.43-45; ECF No. 1].

### B.    The ALJ's Application of the Disability Framework

A child under the age of 18 will be considered disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner determines whether a child is disabled by analyzing three sequential steps, assessing: (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child has any "severe" impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. § 416.924(a); *Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 462 (6th Cir. 2014).

In analyzing functional equivalence, the ALJ examines the effects of a claimant's impairments on six behavioral domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being.  *Barnett*, 573 F. App'x at 464; 20 C.F.R. § 416.926a(b)(1).  A claimant's impairments "functionally

3

equal the listings" if they result in "'marked' limitations in two domains" or "an 'extreme' limitation in one domain."  § 416.926a(a).

Applying this framework, the ALJ concluded that S.D.B. was not disabled.  At the first step, the ALJ found that S.D.B. had not engaged in substantial gainful activity since the application date.  [ECF No. 15-2, PageID.60].  Next, the ALJ determined that S.D.B. had the severe impairments of bipolar disorder, ADHD, oppositional defiant disorder (ODD), and mild intellectual disability.  [*Id.*, PageID.61].  At the third step, she concluded that S.D.B.'s impairments did not meet, medically equal, or functionally equal the severity of the listed impairments.  [*Id.*, PageID.61].

In assessing the six functional equivalence domains, the ALJ found that S.D.B. had a marked limitation in acquiring and using information; "less than marked" limitations in attending and completing tasks, and interacting and relating with others; and no limitation in moving about and manipulating objects, the ability to care for herself, and health and physical well-being. [ECF No. 15-2, PageID.64-69].  As a result, S.D.B. was found not disabled. [*Id.*, PageID.69].

## II.   ANALYSIS

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was

made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).

Buthia argues that the "ALJ failed to consider relevant evidence in the record which suggest that S.D.B. is disabled."  [ECF No. 19, PageID.399]. She at first contends that the record established that S.D.B. had marked limitations in two domains (1) acquiring and using information, and (2) attending and completing tasks.  [*Id.*, PageID.401].  The ALJ found that S.D.B. had a marked limitation in acquiring and using information, and if she also had a marked limitation in attending and completing tasks, she would be considered disabled.  § 416.926a(a).  Buthia also appears to argue that S.D.B. may have had an extreme limitation in one of those domains.  [*Id.*, PageID.403].  An extreme limitation in either domain would render a finding of disability.  § 416.926a(a).

The Court finds that Buthia has shown no error in the ALJ's decision and recommends that the decision be affirmed.

**A.**

A marked limitation is found when "your impairment(s) interferes

seriously with your ability to independently initiate, sustain, or complete

activities.  Your day-to-day functioning may be seriously limited when your

impairment(s) limits only one activity or when the interactive and cumulative

effects of your impairment(s) limit several activities."  § 416.926a(e)(2)(i).

An "extreme" limitation requires proof that the claimant's "impairment(s)

interferes very seriously with [her] ability to independently initiate, sustain,

or complete activities."  § 416.926a(e)(3)(i).

Deficiencies in acquiring and using information may be marked or

extreme if the child does not demonstrate understanding of words about

space, size or time; cannot rhyme words or their sounds; has difficulty

recalling important things learned in school the day before; has difficulty

with math or arithmetic; or talks only in short, simple sentences and has

difficulty explaining what she means.  § 416.926a(g)(3).

Deficiencies in attending and completing tasks can be shown when a

child is "easily startled, distracted, or overreactive to sounds, sights,

movements, or touch"; is slow to focus on or fails to complete activities of

interest (such as games or art projects); repeatedly becomes sidetracked

from activities or frequently interrupts others; is easily frustrated and gives

up on tasks, including ones the child is capable of completing; and requires

extra supervision to stay engaged in an activity.  § 416.926a(h)(3).

Arguing that S.D.B. had marked limitations in these domains, Buthia

relies on S.D.B.'s diagnoses and the teacher questionnaires that S.D.B.'s

teacher, Danielle Landers, completed in October 2016 and April 2018.

[ECF No. 15, PageID.400-401; ECF No. 15-6, PageID.218-225; ECF No.

15-7, PageID.372-379].  S.D.B.'s diagnoses are relevant, but they do not

dictate a finding of disability.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.

1988).

Landers' questionnaires did address the relevant domains.  In the

2016 questionnaire, Landers opined that, under the acquiring and using

information domain, S.D.B. had obvious problems in several categories and

a serious problem with comprehending and doing math problems.  [ECF

No. 15-6, PageID.219].  S.D.B. had obvious, serious and very serious

problems with activities associated with the attending and completing tasks

domain.  [*Id.*, PageID.220].  In the 2018 questionnaire, under the acquiring

and using information domain, Landers found that S.D.B. had an obvious

problem in comprehending and doing math problems, and a serious

problem with applying problem-solving skills in class discussions.  [ECF

No. 15-7, PageID.373].  For the attending and completing task domain,

SDB had obvious, serious and very serious problems in performing several activities.  [*Id.*, PageID.374].

But Landers opined in both questionnaires that S.D.B.'s functioning changed after taking medicine.  [ECF No. 15-6, PageID.224; ECF No. 15-7, PageID.378].  Landers wrote that S.D.B. was "almost unable to complete school work" without medication, and that S.D.B.'s frequent failure to take medication during breaks from school caused the "return transition to be more difficult than necessary."  [ECF No. 15-6, PageID.224; ECF No. 15-7, PageID.377].  When S.D.B. was medicated, she was much more awake, was able to be redirected and exhibited calmer behaviors.  [ECF No. 15-7, PageID.378].

The ALJ considered Ms. Landers' opinions and gave them some weight, reasoning that the record contained no evidence that S.D.B. was "unable to keep up with the education requirement for her age with proper support and psychiatric medication usage."  [ECF No. 15-2, PageID.64].  The ALJ noted that Landers reported that S.D.B. behaved better when she was "on her medications and that when she was not taking her medications her behavior and mood would worsen."  [*Id.*].

Buthia argues that the ALJ should have accorded Landers' opinions more weight because when S.D.B. "does not take her medication she has

behavioral problems."  [ECF No. 19, PageID.401].  Buthia contends that

"assistance from medications does not negate the fact that she still has

actual illnesses, and that when those illnesses are symptomatic, she

cannot function."  [*Id.*, PageID.404].

The first question raised by Buthia's argument is whether the ALJ had

to defer to Landers' opinion weight under the controlling regulations.  The

second question is whether the ALJ properly considered S.D.B.'s lack of

medication compliance.

## B.

Addressing the first question about whether the ALJ had to defer to

Landers' opinion, the Court notes that teachers are "other sources" that

"cannot establish the existence of a medically determinable impairment.

Instead, there must be evidence from an 'acceptable medical source' for

this purpose."  Social Security Ruling (SSR) 06-3p, 2006 WL 2329939, at

*2.  But "information from such 'other sources' may be based on special

knowledge of the individual and may provide insight into the severity of the

impairment(s) and how it affects the individual's ability to function."  *Id.*; *see

also Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015)

("The opinion of a 'non-acceptable medical source' is not entitled to any

particular weight or deference—the ALJ has discretion to assign it any

9

weight he feels appropriate based on the evidence of record.").

Buthia does not rely on an acceptable medical source—a licensed

physician, or licensed or certified psychologist—to support her argument

that S.D.B. had greater limitations than found by the ALJ.  *See* SSR 06-3p,

2006 WL 2329939, at *1.  In contrast to Buthia's reliance on an "other

source," the ALJ relied on and gave great weight to the opinion of state

agency consultant, Amy S. Johnson, Ph.D.  [ECF No. 15-2, PageID.63].

After reviewing the evidence, Dr. Johnson opined in February 2017

that S.D.B. had marked limitations in acquiring and using information, that

she had less than marked limitations in attending and completing tasks,

and that her limitations were "not severe enough to be considered

disabling."  [ECF No. 15-3, PageID.110-115].  Dr. Johnson relied in part on

a February 2017 child mental examination and IQ assessment conducted

by Terry L. Rudolph, Ph.D., finding that S.D.B. was in the mildly impaired

range of cognitive functioning.  [ECF No. 15-7, PageID.328-331].  During

that examination, S.D.B. "was able to sit still for long periods of time," "did

not display restlessness that detracted from the interview process," and

"was generally able to respond to all questions presented to her, but

required that items be repeated."  [*Id.*, PageID.329].  S.D.B. had a

constricted fund of general information and her arithmetic was poor, but

10

she "was able to deal with simple similarities and differences."  [*Id.*, PageID.331].  S.D.B.'s short-term auditory memory was a relative strength. [*Id.*].  Notably, S.D.B. was taking no medication and was not in active mental health treatment during the examination.  [*Id.*].

Dr. Johnson considered Dr. Rudolph's finding that S.D.B. had a mild intellectual disability as well as the evidence in the record that S.D.B. read at a third-grade level and had problems comprehending math calculations to find that she had a marked limitation in acquiring and using information. [ECF No. 15-3, PageID.113].  When finding that S.D.B. had a less than marked limitation in attending and completing tasks, Dr. Johnson noted that S.D.B. was able to sit still for long periods of time, did not display restlessness that detracted from the interview, and was generally able to respond to all questions presented.  [*Id.*].

Buthia cites no opinion from an acceptable medical source that contradicts Dr. Johnson's opinion about S.D.B.'s limitations in the domains at issue.  And, as noted, the ALJ had the discretion to assign Landers' opinion the weight she found appropriate.  *Noto*, 632 F. App'x at 248-49. The Court is not permitted under these circumstances to reweigh the evidence.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and

11

substitute its own judgment for that of the Commissioner merely because
substantial evidence exists in the record to support a different conclusion.").

## C.

The Court next addresses Buthia's argument that the ALJ erred in
considering S.D.B.'s lack of medication compliance when giving Landers'
opinions only some weight.  Generally, "'[a] medical condition that can be
controlled by treatment is not disabling.'"  *Smith v. Comm'r of Soc. Sec.*,
No. 13-10862, 2013 WL 6094745, at *6 (E.D. Mich. Nov. 20, 2013) (quoting
*Warford v. Bowen*, 875 F.2d 671, 673 (8th Cir.1989)).  Thus, "[a] claimant's
non-compliance with prescribed medical treatment is a factor which an ALJ
may properly consider."  *Williams v. Colvin*, No. 4:14CV1057NCC, 2015
WL 5735126, at *5 (E.D. Mo. Sept. 29, 2015). This rule applies even when
the claimant is a child who is not responsible for the medication
noncompliance; the ALJ may find that "the failure to take medication
undermined the *validity of the disability claim itself*."  *JNN by Williams v.
Comm'r of Soc. Sec.*, No. 16-CV-13608, 2018 WL 851282, at *3 (E.D.
Mich. Feb. 14, 2018) (emphasis in original).

In *Robinson o/b/o D.S.L.R. v. Comm'r of Soc. Sec.*, the court found
that the ALJ erred by failing to consider whether there were reasons that
justified the alleged medication noncompliance.  No. CV 18-11835, 2019

12

WL 1474024, at *5 (E.D. Mich. Mar. 18, 2019), *adopted* 2019 WL 1471464

(E.D. Mich. Apr. 3, 2019) (citing 20 C.F.R. § 416.930(c)). The ALJ here did

not address the reasons for S.D.B.'s medication noncompliance. Even so,

Dr. Johnson's finding that S.D.B. was not disabled was based in significant

part on Dr. Rudolph's testing and examination, during which S.D.B. was not

medicated. [ECF No. 15-3, PageID.111; ECF No. 15-7, PageID.331].

In sum, the Court finds that (1) the ALJ did not err in relying on

S.D.B.'s improvement when she was medicated, and (2) the evidence does

not show that S.D.B. was markedly limited in two domains, or extremely

limited in one domain, even when she was unmedicated.

## III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that

Buthia's Motion for Summary Judgment [ECF No. 19] be **DENIED**, the

Commissioner's Motion [ECF No. 22] be **GRANTED**, and the ALJ's

decision **AFFIRMED**.

<div style="text-align: right">

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

</div>

Dated: August 5, 2020

## <u>NOTICE TO THE PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

14

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2020.

<div style="margin-left: 40%;">

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

</div>

15